CASE NO. 2:25-cv-01056-SSV-EJD

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

*WOODVINE PARTNERS, LLC*, Appellant

*VERSUS*

*MIRACLE RESTAURANT GROUP LLC*, Appellee

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

BANKRUPTCY CASE NO. 24-11158
(*IN RE: MIRACLE RESTAURANT GROUP LLC*, Debtor)

HON. JUDGE MEREDITH S. GRABILL, PRESIDING

ORIGINAL BRIEF OF APPELLANT
WOODVINE PARTNERS, LLC

Respectfully submitted,

*/s/ William T. Finn*
William T. Finn (La. Bar No. 1359)
Leann O. Moses (La. Bar No. 19439)
David F. Waguespack (La. Bar No. 21121)
Charles M. Meeks (La. Bar No. 40448)
CARVER, DARDEN, KORETZKY, TESSIER,
FINN, BLOSSMAN & AREAUX, LLC
1100 Poydras Street, Suite 3100
New Orleans, Louisiana 70163
Telephone: (504) 585-3800
Telecopier: (504) 585-3801
finn@carverdarden.com
moses@carverdarden.com
waguespack@carverdarden.com
meeks@carverdarden.com

*Attorneys for Appellant, Woodvine Partners, LLC*

## <u>RULE 8012 DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Bankruptcy Procedure 8012(a), Woodvine Partners, LLC, Appellant, hereby discloses that it has no parent corporation and that no publicly held corporation owns 10% or more of its stock.

# **TABLE OF CONTENTS**

RULE 8012 DISCLOSURE STATEMENT.............................................................. i
TABLE OF CONTENTS................................................................................. ii
TABLE OF AUTHORITIES ........................................................................... iii
STATEMENT REGARDING ORAL ARGUMENT ............................................ vi
STATEMENT OF JURISDICTION.................................................................1
STATEMENT OF ISSUES AND STANDARD OF REVIEW ..............................1
STATEMENT OF THE CASE........................................................................3
SUMMARY OF ARGUMENT ......................................................................9
LAW AND ARGUMENT .............................................................................10

I.    As a matter of law, bankruptcy courts may not confirm SubChapter V plans containing non-consensual injunctions that protect the debtor's non-bankrupt guarantors for years post-confirmation. .......................................................10

    The Benefits of Bankruptcy are limited to Debtors. ................................10

    The Non-Debtor Injunction is contrary to the Supreme Court's decision in *Purdue Pharma*. ......................................................................................14

    The Non-Debtor Injunction is contrary to the Fifth Circuit's decision in *Highland II*, et al......................................................................................16

    Any reliance on *In re Hal Luftig* should be rejected...............................19

    *Zale Corp.* does not permit non-debtor injunctions post-confirmation. ..21

II.   The Bankruptcy Court committed reversible error in finding the Debtor's evidence demonstrated "unusual circumstances" which warrant the Non-Debtor Injunction.........................................................................................24

III.  The Bankruptcy Court committed reversible error in finding the Debtor's evidence satisfies the four-prong preliminary injunction test additionally required under 11 U.S.C. § 105(a).................................................................27

IV.   The Bankruptcy Court committed reversible error in finding the requirements of § 1191(b) were satisfied and by confirming the Plan without fair and equitable protections mitigating the risks borne by Woodvine because of the Non-Debtor Injunction. ................................................................................31

CONCLUSION.........................................................................................32
CERTIFICATE OF SERVICE .....................................................................I
CERTIFICATE OF COMPLIANCE.............................................................I

## <u>TABLE OF AUTHORITIES</u>

### Cases

*A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986)............................22

*Browning Seed, Inc. v. Bayles*, 812 F.2d 999 (5th Cir. 1987) .................................13

*Coast to Coast Leasing, LLC v. M&T Equip. Fin. Corp.* (*In re Coast to Coast Leasing, LLC*), 661 B.R. 621 (Bankr. N.D. Ill. 2024)..........................................21

*Feld v. Zale Corp.* (*in Re Zale Corp.*), 62 F.3d 746 (5th Cir. 1995) 9, 12, 16, 22, 23, 24, 25, 26

*GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711 (5th Cir. 1985) .........11

*Harrington v. Purdue Pharma L.P.* (*In re Purdue Pharma*), 603 U.S. 204 (2024) ("<u>Purdue Pharma</u>") ........................................................... 3, 11, 12, 14, 15, 16, 23

*In re A.H. Robins Co., Inc.*, 880 F.2d 694 (4th Cir. 1989) ......................................23

*In re Bernhard Steiner Pianos USA Inc.,* 292 B.R. 109 (Bankr. N.D. Tex. 2002) .23

*In re Caletri*, 517 B.R. 655 (Bankr. E.D. La. 2014) ................................................10

*In re Calpine Corp.*, 365 B.R. 401 (S.D.N.Y. 2007)................................................21

*In re Claar Cellars LLC*, 623 B.R. 578 (Bankr. E.D. Wash. 2021) .......................12

*In re Combustion Eng'g, Inc.*, 391 F.3d 190 (3d Cir. 2004), *as amended* (Feb. 23, 2005)..................................................................................................................26

*In re Couture Hotel Corporation,* 536 B.R. 712 (Bankr. N.D. Texas, Dallas Division 2015) .......................................................................................... 26, 30

*In re Diocese of Buffalo, N.Y.*, 663 B.R. 197 (Bankr. W.D.N.Y. 2024)..... 11, 18, 21

*In re Durr Mech. Constr., Inc.*, 604 B.R. 131 (Bankr. S.D.N.Y. 2019).................21

*In re Gulf South Energy Services, LLC*, 24-10178, 2025 WL 510549 (Bankr. W.D. La. Feb. 14, 2025 ...............................................................................................19

*In re Hal Luftig Co., Inc.*, 667 B.R. 638 (Bankr. S.D.N.Y. 2025)........ 19, 20, 21, 28

*In re Lyondell Chem. Co.*, 402 B.R. 571 (Bankr. S.D.N.Y. 2009).........................18

*In re Onyx Site Servs., LLC*, 3:24-AP-00070-JAB, 2024 WL 4132150 (Bankr. M.D. Fla. Aug. 22, 2024) ...................................................................18

*In re Pac. Lumber Co.*, 584 F.3d 229 (5th Cir. 2009) ...................................... 12, 16

*In re Parlement Techs., Inc.*, 661 B.R. 722 (Bankr. D. Del. 2024) 11, 18, 20, 25, 26, 27, 28

*In re S.I. Acquisition, Inc.*, 817 F.2d 1142 (5th Cir. 1987) .....................................10

*In re Seatco*, 257 B.R. 469 (Bankr. N.D. Tex. 2001) ...........................................23

*Law v. Siegel*, 571 U.S. 415; 134 S.Ct. 1188; 188 L.Ed.2d 146 (2014).................23

*Matter of Fabricators, Inc.*, 926 F.2d 1458 (5th Cir. 1991).....................................29

*Matter of Fieldwood Energy LLC*, 93 F.4th 817 (5th Cir. 2024) ..............................3

*Matter of Holtkamp*, 669 F.2d 505 (7th Cir. 1982) .................................................23

*NCNB Texas Nat. Bank v. Johnson*, 11 F.3d 1260 (5th Cir. 1994) ................. 13, 30

*NexPoint Advisors, L.P. v. Highland Capital Mgmt., L.P.* (*In re Highland Capital Mgmt., L.P.*), 48 F.4th 419 (5th Cir. 2022) ..........................................................17

*Patton v. Bearden*, 8 F.3d 343 (6th Cir. 1993)............................................ 22, 23, 26

*Purdue Pharma L.P., v. Commonwealth of Massachusetts* (*In re Purdue Pharma L.P.*), 666 B.R. 461 (Bankr. S.D.N.Y. 2024) ......................................................21

*Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282 (2d Cir. 2003) ....................................21

*R.I.D.C. Indus. Dev. Fund v. Snyder*, 539 F.2d 487 (5th Cir. 1976) ......................13

*S.E.C. v. Drexel Burnham Lambert Grp., Inc.* (*In re Drexel Burnham Lambert Grp., Inc.*), 960 F.2d 285 (2d Cir. 1992) ..............................................................23

*Shafirovich v. Saleh*, CV 24-238, 2025 WL 1795043 (E.D. La. June 26, 2025) (slip copy) ...................................................................................................... 11, 12

*State of Maryland v. Purdue Pharma L.P.* (*In re Purdue Pharma L.P.*), 19-23649 (SHL), 2024 WL 4894349 (S.D.N.Y. Nov. 26, 2024) (slip copy).......................21

*United States v. Sutton*, 786 F.2d 1305 (5th Cir. 1986)...........................................12

*Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541 (5th Cir. 1983) ...........................27

## Statutes

11 U.S.C. § 105 ....................................... 3, 11, 12, 14, 16, 20, 21, 23, 24, 25, 27

11 U.S.C. § 1123 .................................................................................15

11 U.S.C. § 1191 ...............................................................................1, 31

11 U.S.C. § 1192 ..................................................................................7

11 U.S.C. § 1301 .................................................................................11

11 U.S.C. § 362 ................................................................ 4, 10, 11, 16, 20

11 U.S.C. § 524 .......................................................... 11, 12, 14, 15, 26

28 U.S.C. § 1334 ..................................................................................1

28 U.S.C. § 157 ...................................................................................1

28 U.S.C. § 158 ...................................................................................1

Federal Rule of Bankruptcy Procedure 7001 ..........................................22

Federal Rule of Bankruptcy Procedure 8019 .......................................... vi

La. Civ. Code art. 1794 ................................................................. 13, 30

La. Civ. Code art. 1795 ................................................................. 13, 30

La. Civ. Code art. 1796 ................................................................13

La. Civ. Code art. 1800 ................................................................. 13, 30

La. Civ. Code art. 1804 ................................................................. 13, 29

La. Civ. Code art. 1806 ........................................................... 13, 29, 30

La. Civ. Code art. 2036 ................................................................31

La. Civ. Code art. 2041 ................................................................31

La. Civ. Code art. 3035 ................................................................13

La. Civ. Code art. 3045 ................................................................13

La. Civ. Code art. 3046 ................................................................13

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Pursuant to Federal Rule of Bankruptcy Procedure 8019 and the presumption of oral argument in subsection (b) thereof, Woodvine Partners, LLC, Appellant, requests oral argument. Given the complexity of the issues involved in this appeal, oral argument will assist both the Court and the parties and further the interests of justice. In addition, the issues involved in this case present novel and important questions of law following the United States Supreme Court's decision in *Purdue Pharma*[1] and the Fifth Circuit Court of Appeals' decision in *Highland II*,[2] as recognized by the Bankruptcy Court.[3]

---

[1] *Infra.*

[2] *Infra.*

[3] *See* Transcript of May 2, 2025 Hearing, at 3-28:15 to 3-28:18 and 3-28:21 to 3-29:3, attached hereto as Exhibit 1 ("THE COURT: Okay. All right. Well, I appreciate everybody's hard work on this. You know, this is a good case for testing the limits and boundaries of <u>Perdue Pharma</u> [sic] and <u>Highland II</u>, or 46, whichever one" . . . "THE COURT: You know, because it's -- and that happens when a landmark case comes down, and it deals with a certain set of facts in a certain context. You know, we have to wonder and, hypothesize, well, what does it mean in other contexts. What's the stretch. Or is it more limited than we think? So that's just what we're doing here. We're just trying to figure out the path and figure out what things mean, and that's what we do as lawyers.").

## **STATEMENT OF JURISDICTION**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334 and 28 U.S.C. §§ 157-58. This is an appeal from final orders under 28 U.S.C. § 158(a)(1) concerning the confirmation of a plan for reorganization by the United States Bankruptcy Court for the Eastern District of Louisiana (the "Bankruptcy Court") in case number 24-11158, and a core proceeding under 28 U.S.C. § 157(b)(2). The Bankruptcy Court's final orders subject to this appeal are: (i) *Memorandum Order and Opinion* entered on May 13, 2025 [BR. Doc. 326] and (ii) *Findings of Fact and Conclusions of Law Confirming the Debtor's Third Amended Subchapter V Plan of Reorganization* entered on May 27, 2025 [BR. Doc. 337].[4] The Notice of Appeal was timely filed on May 27, 2025 [BR. Doc. 338].

## **STATEMENT OF ISSUES AND STANDARD OF REVIEW**

1.      Is a bankruptcy court authorized by law to confirm a Subchapter V plan with a provision that enjoins a creditor, over the creditor's objection, from enforcing guaranties from non-debtor guarantors during the life of the plan?

2.      Did the Bankruptcy Court commit reversible error by finding that the Third Amended Chapter 11 Small Business Subchapter V Plan satisfied the requirements for confirmation under 11 U.S.C. § 1191(b)-(c) with an included

---

[4] Memorandum Order and Opinion of May 13, 2025 ("Opinion") [BR. Doc. 326], attached hereto as Exhibit 2; *see also In re Miracle Rest. Grp., LLC*, 24-11158, 2025 WL 1400915 (Bankr. E.D. La. May 13, 2025); Findings of Fact and Conclusions of Law Confirming the Debtor's Third Amended Subchapter V Plan of Reorganization dated May 27, 2025 (the "Confirmation Order") [BR. Doc. 337], attached hereto as Exhibit 3 (excluding exhibits thereto, attached hereto separately).

injunction barring Woodvine Partners, LLC ("Woodvine") from enforcing guaranties from non-debtor guarantors during the life of the plan?

3.    Did the Bankruptcy Court commit reversible error by overruling the objections of Woodvine and confirming the Third Amended Chapter 11 Small Business Subchapter V Plan with the injunction barring Woodvine from enforcing guaranties from non-debtor guarantors during the life of the Plan without providing protections for Woodvine?

4.    Did the Bankruptcy Court commit reversible error by finding "unusual circumstances" to authorize confirmation of the Third Amended Chapter 11 Small Business Subchapter V Plan with the injunction barring Woodvine from enforcing guaranties from non-debtor guarantors during the life of the Plan?

5.    Did the Bankruptcy Court commit reversible error by issuing an injunction which bars Woodvine from enforcing guaranties from non-debtor guarantors for three years after confirmation of the Third Amended Chapter 11 Small Business Subchapter V Plan based upon its finding that the injunction was "temporary"?

6.    Did the Bankruptcy Court commit reversible error by finding that the injunction in the Third Amended Chapter 11 Small Business Subchapter V Plan, which bars Woodvine from enforcing guaranties from non-debtor guarantors during the life of the Plan, satisfies the four-prong preliminary injunction test additionally

required under 11 U.S.C. § 105(a)?

These issues challenge the bankruptcy court's legal conclusions and findings on mixed questions of fact and law. Bankruptcy court findings of fact are reviewed for clear error, and questions of law and mixed questions of law and fact are reviewed *de novo*. *Matter of Fieldwood Energy LLC*, 93 F.4th 817, 821 (5th Cir. 2024).

## STATEMENT OF THE CASE

Woodvine brought this appeal to challenge confirmation of the Chapter 11, Subchapter V bankruptcy plan of Miracle Restaurant Group, LLC ("Debtor"), over Woodvine's objection, because it enjoins Woodvine's enforcement of personal guaranties against non-debtors for at least three years. Such a non-consensual, non-debtor, post-confirmation injunction is not supported by the evidence and the shield it provides guarantors undermines bedrock principles relied upon by commercial lenders and violates the Bankruptcy Code, as recently held in United States Supreme Court's decision in *Harrington v. Purdue Pharma L.P.* (*In re Purdue Pharma*), 603 U.S. 204, 227 (2024) ("*Purdue Pharma*"), as the Fifth Circuit has long held and re-affirmed in *Matter of Highland Capital Mgmt., L.P.*, 132 F.4th 353, 358 (5th Cir. 2025) ("*Highland II*").

Since 2005, Debtor has owned and operated Arby's restaurant franchises in

multiple states.[5] Donald Moore ("Moore") owns or controls a 68.96% equity stake in Debtor and is its CEO, Manager, Managing Member, and Partnership Representative.[6] Robert Miller ("Miller") holds a 25.13% interest in Debtor and has no day-to-day role in Debtor's operations.[7] CAPTEC Financial Holdings Corp. ("CAPTEC") holds the remaining 5.91% interest in Debtor and Patrick Beach ("Beach") is its CEO and provides occasional advice as a member of Debtor's "Board of Managers."[8] Debtor filed its Petition for reorganization under Chapter 11, Subchapter V of the Bankruptcy Code on June 20, 2024 (the "Petition").[9] Upon filing the Petition, Debtor's creditors, including Woodvine, were enjoined from enforcing claims against Debtor during the pendency of the bankruptcy proceeding by the automatic stay under 11 U.S.C. § 362, but it was not extended to protect the Debtor's co-debtors.

Woodvine is Debtor's creditor based upon a Promissory Note executed by Debtor on December 22, 2023, in the original principal amount of $750,000.00 (the

---

[5] *See* Debtor's Third Amended Plan of Reorganization Under Subchapter V Dated March 18, 2025 (the "Plan") [BR. Doc. 275], Section 1.2 at p. 2, attached hereto as Exhibit 4. In 2010, Debtor filed for Chapter 11 bankruptcy and approximately 35 of its 60 Arby's locations were closed or sold. *Id.* Debtor continued to own and operate another 25 Arby's franchises. *Id.*

[6] Debtor's Petition for Bankruptcy [BR. Doc. 1] at p. 12, attached hereto as Exhibit 5; *see also id.* at p. 5, 11, 12; Debtor's Statement of Financial Affairs [BR. Doc. 99] at p. 9, attached hereto as Exhibit 6. Moore is listed as equity owner of 26.54% in Debtor. Donald C. Moore Investments, Inc. is listed as equity owner of 42.42% in Debtor. Debtor's Amended List of Equity Security Holders [BR. Doc. 152], attached hereto as Exhibit 7.

[7] *See* Declaration of Moore [BR. Doc. 307-3], ¶ 18, at p. 5, attached hereto as Exhibit 8; *see also* Transcript of April 23, 2025 Hearing, at 1-54:3 to 1-54:22, attached hereto as Exhibit 9.

[8] Ex. 7, Debtor's Amended List of Equity Security Holders [BR. Doc. 152]; *see* Ex. 8, Declaration of Moore [BR. Doc. 307-3], ¶ 18, at p. 5; Ex. 9, Transcript of April 23, 2025 Hearing, at 1-53:19 to 1-54:2; 1-54:23 to 1-55:1.

[9] Ex. 4, Plan [BR. Doc. 275], Art. III, Item 3.03, at p. 7.

"Note"), and maturing on June 30, 2024, with a 10% interest rate, which increases to 15% upon maturity or default.[10] As security for the Note, Woodvine obtained three Continuing Guaranties, each executed on or about December 22, 2023, by Moore, Miller, and Beach (collectively referred to as the "Guarantors") who solidarily and unconditionally guaranteed the prompt payment of the Note in full, plus attorneys' fees and all other related collection costs and expenses incurred by Woodvine (each a "Guaranty," and collectively, the "Guaranties").[11]

As of the June 20, 2024 Petition date, Debtor had not paid Woodvine any principal owed under the Note. Ten days later, the Note fully matured on June 30, 2024.[12] On the basis of these defaults, interest on the Note began to accrue at the maturity rate of 15%.[13] Woodvine made amicable demand on the Guarantors, who failed to fully pay the outstanding balance due on the Note, and on November 19, 2024, Woodvine filed a Petition against Miller and Beach to enforce their Guaranties in Louisiana state court, in a lawsuit that remains pending.[14]

### The Proposed Plan and Non-Debtor Injunction

On March 18, 2025, Debtor filed a plan proposal entitled *Debtor's Third*

---

[10] *See* Ex. 4, Plan [BR. Doc. 275], Section 1.5 at p. 3 (incorrectly stating the Note was executed on December 5, 2023). *See also* Woodvine's Proof of Claim, attached hereto as Exhibit 10.

[11] *See* Debtor's Schedule H, Codebtors [BR. Doc. 98] at pp. 1, 3, 4, attached hereto as Exhibit 11.

[12] *See id.*

[13] Ex. 10, Woodvine's Proof of Claim.

[14] The Case against Miller and Beach was filed in the 22nd Judicial District Court for the Parish of St. Tammany, State of Louisiana, as case number 2024-16358. A copy of the Petition commencing same is attached hereto as Exhibit 12.

*Amended Plan of Reorganization Under Subchapter V Dated March 18, 2025* [BR. Doc. 275] (the "Plan"), confirmed on May 27, 2025, and is the subject of this appeal.[15] The Plan lasts for three years and generally requires the Debtor to pay creditors from the cash flow generated by its remaining restaurants.[16] The Guarantors, except for Moore, are not involved in Debtor's daily operations. None of the Guarantors provide any funding of Plan payments and do not provide any commitment regarding the exit financing contemplated in the Plan.

The Plan amortizes Woodvine's allowed claim of $787,916.66 over 7 years at 5.0% interest and requires the Debtor to make thirty-six monthly payments of $11,136.34 to Woodvine and a balloon payment of $483,573.00 at the end of the Plan (the "Balloon Payment"), after the thirty-sixth month.[17] Although not required by the Plan, the Guarantors are expected to "back" the Debtor's loan for the Balloon Payment.[18] The Debtor is not required to pay the difference in interest between the Plan's 5% rate and the Note's 15% maturity rate (the "Unaddressed Interest"). The Guarantors, however, remain liable for the Unaddressed Interest, which will be approximately $347,000.00 by the time of the Balloon Payment.

Pursuant to Article X of the Plan, entitled "Discharge," the Plan discharges

---

[15] *See* Ex. 3, Confirmation Order [BR. Doc. 337].

[16] Ex. 4, Plan [BR. Doc. 275], at pp. 4-5.

[17] Ex. 4, Plan [BR. Doc. 275], at p. 3 (Classifying Woodvine as the sole Class 3 creditor); *id.* at p. 13 (describing treatment of Woodvine's claims as a Class 3 creditor).

[18] Ex. 2, Opinion [BR. Doc. 326], at p. 13; *see also* 2025 WL 1400915 at *8.

the Debtor of liabilities addressed in the three-year Plan after its full and successful performance.[19] Article X further enjoins creditors "from taking any action to prosecute or collect any debt or claim, which is specifically addressed within the Plan, against any guarantor, insider, officer, director, employee, or interest holder" (the "Non-Debtor Injunction").[20]

Thus, the Plan permits Woodvine to immediately pursue the Guarantors for the Unaddressed Interest in the pending state court lawsuit, however Woodvine may not pursue them for the Note's principal and 5% interest under the Plan unless the Debtor defaults under the Plan and fails to timely cure its default after notice.[21]

Objections to confirmation of the Plan due to the inclusion of Article X's non-debtor injunction were filed by creditor Iris Associates, L.P. ("Iris Associates") on March 18, 2025, and by the U.S. Trustee on April 16, 2025.[22] Woodvine joined, adopted, and supplemented these objections on April 16 and 28, 2025.[23] Debtor filed

---

[19] Ex. 3, Confirmation Order [BR. Doc. 337], at p. 9 (discussing Article X of the Plan [BR. Doc. 275], Ex. 4 at p. 23).

[20] *Id.* The pertinent language in the Plan [BR. Doc. 275], Ex. 4 at pp. 22-23, provides "Notwithstanding anything contained herein to the contrary, neither the guarantors, insiders, officers, directors, employees, nor the interest holders of the Debtor shall be discharged and released from liability, if any, for claims and debts arising under or in connection with the Debtor or this Subchapter V Case and/or otherwise addressed and/or treated in this Plan. However, absent further Court order upon notice and hearing, the exclusive remedy for payment of any claim or debt addressed in this Plan, so long as the Plan is not in default, shall be the Plan and all parties classified in and under Articles III and IV herein are enjoined from taking any action inconsistent herewith, including, but not limited to, any action to prosecute or collect any debt or claim against any guarantor, insider, officer, director, employee or interest holder; provided however, that all creditors shall retain the right to pursue any third party guarantor for any debts not addressed in this plan and the discharge under 11 U.S.C. § 1192 shall not apply to any third party guarantor. …"

[21] Woodvine's rights upon Debtor's default of the Plan are governed by Article XI of the Plan [BR. Doc. 275], Ex. 4 at pp. 23-24, which provides for a notice and cure procedure.

[22] Iris Associates L.P.'S Objection to Confirmation of the Debtor's Third Amended Plan of Reorganization Under Subchapter V Dated March 18, 2025 [Ref. Doc. 275] filed on March 18, 2025 [BR. Doc. 276], attached hereto as Exhibit 13; U.S. Trustee's Objection to Confirmation [BR. Doc. 294] at pp. 1, 3-8, attached hereto as Exhibit 14.

[23] Woodvine's Joinder in Objection to Confirmation of Debtor's Third Amended Plan of Reorganization [D.I. 275]

responses on April 22 and 28, 2025.[24]

On April 21, 2025, Debtor filed declarations of Moore and its fast-food franchise expert, Michael M. Elliot, in support of confirmation of the Plan.[25] The Bankruptcy Court held hearings on the Non-Debtor Injunction on April 23, April 30, and May 2, 2025.[26] At the April 23, 2025 hearing, Moore testified to his day-to-day role with Debtor and the non-operational roles of Miller as investor and, with Beach, as providers of occasional advice and counsel.[27] Elliot opined that Debtor's future, unknown lender for the Balloon Payment will require personal guaranties from Debtor's owners, "particularly given the situation we've got in the plan."[28]

On May 13, 2025, the Bankruptcy Court entered its Opinion [BR. Doc. 326] holding that the Non-Debtor Injunction is not prohibited as a matter of law.[29] On May 27, 2025, the Bankruptcy Court entered its Confirmation Order [BR. Doc. 337], finding that the Debtor satisfied its burden to show the Non-Debtor Injunction was

---

filed on April 16, 2025 [BR. Doc. 293], attached hereto as Exhibit 15; Woodvine's Supplemental Objection To Confirmation Of Debtor's Third Amended Plan Of Reorganization [D.I. 275] filed April 28, 2025 [BR. Doc. 319], attached hereto as Exhibit 16.

[24] Debtor's Omnibus Response to Objections to Debtor's Third Amended Plan Of Reorganization [BR. Doc. 309] dated April 22, 2025, attached hereto as Exhibit 17. Debtor's Response to Supplemental Objection to Confirmation of Debtor's Third Amended Plan of Reorganization [BR. Doc. 322] filed on April 29, 2025, attached hereto as Exhibit 18.

[25] Ex. 8, Declaration of Moore [BR. Doc. 307-3]; Declaration of Michael M. Elliot [BR. Doc. 307-2], attached hereto as Exhibit 19.

[26] Ex. 9, Transcript of April 23, 2025 Hearing; Transcript of April 30, 2025 Hearing, attached hereto as Exhibit 20; Ex. 1, Transcript of May 2, 2025 Hearing.

[27] Ex. 9, Transcript of April 23, 2025 Hearing, at 1-47:18 to 1-48:18 (Direct testimony), 1-53:13 to 1:57:4 (Cross-Exam).

[28] Ex. 9, Transcript of April 23, 2025 Hearing, at 1-65:2 to 1-65:12 (Direct testimony).

[29] Ex. 20, Transcript of April 30, 2025 Hearing, at 2-55:3 to 2-56:7; Ex. 2, Opinion [BR. Doc. 326], 2025 WL 1400915.

warranted and confirming the Plan over Woodvine's objections.[30] Woodvine appeals the Opinion and Confirmation Order.

## SUMMARY OF ARGUMENT

This appeal challenges confirmation of the Debtor's chapter 11 bankruptcy Plan because it includes the Non-Debtor Injunction which bars Woodvine from prosecuting its pending lawsuit against the non-debtor Guarantors for at least three years. The Bankruptcy Court committed reversible error by confirming the Plan with the Non-Debtor Injunction provision.

The Bankruptcy Code limits the benefits of the automatic stay and discharge to the debtor and generally permits action against the debtor's non-bankrupt co-obligors. The Plan's Non-Debtor Injunction improperly extends these benefits to the Guarantors post-confirmation contrary to the evidence, the United States Supreme Court's decision in *Purdue Pharma*, and the Fifth Circuit's decision in *Highland II*. Further, the cases cited to justify the Non-Debtor Injunction do not authorize bankruptcy courts to confirm chapter 11 plans with non-consensual injunctions that protect non-debtors for years after confirmation. The pre-*Purdue Pharma* cases which permitted injunctions like the one in the Plan relied on misinterpreted *dicta* from *Feld v. Zale Corp.* (*in Re Zale Corp.*), 62 F.3d 746, 761 (5th Cir. 1995) ("*Zale Corp.*") and rest on a statutory basis invalidated by *Purdue Pharma*.

---

[30] *See also* Ex. 2, Opinion [BR. Doc. 326], 2025 WL 1400915; Ex. 3, Confirmation Order [BR. Doc. 337].

To the extent *Zale Corp.*'s allowance of "temporary" non-debtor injunctions in "unusual circumstances" is still good law, the three-year injunction here is excessive and not "temporary." The Debtor failed to meet its burden of proof to show the "unusual circumstances" warrant the extraordinary relief afforded to the Guarantors by the Non-Debtor Injunction. If a non-consensual, post-confirmation, non-debtor injunction lasting for years is warranted here, it will be warranted in practically all chapter 11 cases. The Bankruptcy Court's approval of the Non-Debtor Injunction in this case distorts the concept of conventional solidarity and threatens to **undermine bedrock** principles relied upon by all commercial lenders. The Non-Debtor Injunction is unfair and inequitable and the Plan should not have been approved.

## LAW AND ARGUMENT

I.   **As a matter of law, bankruptcy courts may not confirm SubChapter V plans containing non-consensual injunctions that protect the debtor's non-bankrupt guarantors for years post-confirmation.**

*The Benefits of Bankruptcy are limited to Debtors.*

Debtors file for bankruptcy to halt collection efforts and provide an opportunity for a "fresh start."[31] Immediately upon filing, the debtor receives the *preliminary* protections of the automatic stay under § 362(a), giving the debtor a *temporary* "'breathing spell during which the debtor can focus on the work of the

---

[31] *See In re Caletri*, 517 B.R. 655, 661 (Bankr. E.D. La. 2014) ("the aim of the Bankruptcy Code is to give the debtor a fresh start"); *In re S.I. Acquisition, Inc*., 817 F.2d 1142, 1146 (5th Cir. 1987).

bankruptcy."[32] If the debtor "proceeds with honesty and places virtually all its assets on the table for its creditors," the debtor's temporary protections under the stay become *permanent* by the debtor's discharge under § 524.[33] Until then, under § 362(c)(2)(C), the § 362(a) stay remains in place to protect the debtor unless the case is dismissed or closed.[34]

By its express terms, the automatic stay applies to chapter 11 debtors and not their co-debtors.[35] In rare instances, however, bankruptcy courts have extended the stay to protect non-debtors *during the course of bankruptcy proceedings* by preliminary injunctions issued under § 105(a).[36] Preliminary injunctive relief, including under § 105(a), is an extraordinary remedy "which should be granted only in limited circumstances," and the party seeking one "has a substantial burden."[37]

The court's § 105(a) injunction power is not unlimited, as § 105(a) "does not authorize the bankruptcy courts to create substantive rights that are otherwise

---

[32] *In re Parlement Techs., Inc.*, 661 B.R. 722, 724 (Bankr. D. Del. 2024) ("*Parlement Techs*"); *see In re S.I. Acquisition, Inc.*, 817 F.2d at 1146 ("The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. … It stops all collection efforts, all harassment, and all foreclosure actions."); *Shafirovich v. Saleh*, CV 24-238, 2025 WL 1795043, at *1 (E.D. La. June 26, 2025) (slip copy).

[33] *Purdue Pharma*, 603 U.S. at 209. Discharge "not only releases or voids any past or future judgments on the discharged debt; it also operates as an injunction prohibiting creditors from attempting to collect or to recover the debt." *Id.* at 215 (*citing* 11 U.S.C. §§ 524(a)(1), (2)).

[34] 11 U.S.C. § 362(c)(2)(C).

[35] *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985) ("By its terms the automatic stay applies only to the debtor, not to co-debtors under Chapter 7 or Chapter 11 of the Bankruptcy Code. A co-debtor stay does apply in certain limited circumstances … . 11 U.S.C. § 1301(a).").

[36] *See, e.g.*, *In re Diocese of Buffalo, N.Y.*, 663 B.R. 197, 201 (Bankr. W.D.N.Y. 2024) (noting "[t]his Court previously granted temporary stays to enable the parties to negotiate a plan that would include a channeling injunction," but denying the debtor's motion to extend stay because succesful negotiations of a chapter 11 plan were unlikely.); *Parlement Techs.*, 661 B.R. at 724 ("cases have long recognized that bankruptcy courts may enter a preliminary injunction that operates to stay actions against non-debtors.") (addressing 60-day pre-confirmation injunction request).

[37] *Parlement Techs.*, 661 B.R. at 728.

unavailable under applicable law, or constitute a roving commission to do equity."[38]

Thus, § 105 injunctions must be consistent with the rest of the Bankruptcy Code and

cannot be used to alter its other provisions.[39] "[B]ankruptcy injunctions, though not

in themselves releases, similarly act to shield persons and entities from liability and

therefore may not be entered to protect non-debtors not legally entitled to release."[40]

"Thus, a bankruptcy court that approves a non-consensual release and/or injunction

protecting non-debtors "exceed[s] its powers under § 105."[41]

Similarly, the bankruptcy discharge **_only protects the debtor_**, except in a few

inapplicable instances specifically provided for in the Bankruptcy Code.[42] Section

524(e) explicitly provides that the "discharge of a debt of the debtor does not affect

the liability of any other entity on, or the property of any other entity for, such debt"

and "precludes a co-obligor of a bankrupt debtor from piggybacking on rights the

debtor enjoys under the Bankruptcy Code, including the right to discharge or

restructure indebtedness."[43]

---

[38] *Highland II*, 132 F.4th at 358; *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986).

[39] *Zale Corp.*, 62 F.3d 746, 760 (5th Cir. 1995).

[40] *Highland II*, 132 F.4th at 358.

[41] *Id.* at 359 (*citing Zale Corp.*, 62 F.3d at 761). **Accordingly, "unusual circumstances" considered in _Zale Corp._ should not be considered.**

[42] 11 U.S.C. § 524(e); *see Purdue Pharma*, 603 U.S. at 221 ("Generally, too, the bankruptcy code reserves this benefit to 'the debtor'—the entity that files for bankruptcy") (*citing* 11 U.S.C. § 1141(d)(1)(A), § 524(e), § 727(a)–(b)); *see also Shafirovich*, 2025 WL 1795043 at *1 (*citing In re Divine Ripe, L.L.C.*, 538 B.R. 300, 309 (Bankr. S.D. Tex. 2015)).

[43] 11 U.S.C. § 524(e).  *See also In re Pac. Lumber Co.*, 584 F.3d 229, 252-53 (5th Cir. 2009) (Section 524(e) "is not intended to serve th[e additional] purpose of releasing non-debtors."); *In re Claar Cellars LLC*, 623 B.R. 578, 593 (Bankr. E.D. Wash. 2021) ("If a co-obligor seeks a discharge or to restructure its liability on a jointly liable claim, section 524(e) effectively requires the co-obligor to commence its own bankruptcy case.").

Lenders, cognizant of the debtor discharge, often require security for their borrowers' payment obligations, typically through taking security interests on the debtor's property or personal guaranties.[44] The very reason a lender obtains a personal guaranty is to avoid the risk that the borrower cannot pay, and the Bankruptcy Code allows creditors to enforce pre-bankruptcy personal guaranties against non-debtors, even during the stay and even after the debtor's discharge.[45] Thus, they are ubiquitous in lending and are used by nearly all commercial lenders.

As is typical, Woodvine obtained commercial guaranties from the Guarantors to secure the Debtor's performance of the Note.[46] Thus, the Non-Debtor Injunction

---

[44] *NCNB Texas* Nat. *Bank v. Johnson*, 11 F.3d 1260, 1266 (5th Cir. 1994) ("... a lender obtains guaranties specifically to provide an alternative source of repayment in the event that the primary obligor's debt is discharged in bankruptcy."). Through a typical commercial guaranty, like the ones Woodvine is enjoined from enforcing, the guarantor agrees to be solidarily liable with the borrower for the indebtedness, on a joint and several basis, permitting the lender to pursue the full amount of the debt from its choice of the borrower or guarantor(s). *See* La. Civ. Code art. 3035 ("Suretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so."); *id*. at art. 3045 ("A surety, or each surety when there is more than one, is liable to the creditor in accordance with the provisions of this Chapter, for the full performance of the obligation of the principal obligor, without benefit of division or discussion, even in the absence of an express agreement of solidarity."); *id*. at art. 1796 ("A solidary obligation arises from a clear expression of the parties' intent or from the law."); *id*. at art. 1794 ("An obligation is solidary for the obligors when each obligor is liable for the whole performance."); *id*. at art. 1795 ("An obligee, at his choice, may demand the whole performance from any of his solidary obligors."); *id*. at art. 1800 ("A failure to perform a solidary obligation through the fault of one obligor renders all the obligors solidarily liable for the resulting damages"); *id*. at art. 1804 ("… If the circumstances giving rise to the solidary obligation concern only one of the obligors, that obligor is liable for the whole to the other obligors who are then considered only as his sureties."); *id.* at art. 1806 ("A loss arising from the insolvency of a solidary obligor must be borne by the other solidary obligors in proportion to their portion.").

[45] *NCNB Texas Nat. Bank*, 11 F.3d at 1266 ("The discharge of a debtor in reorganization proceedings does not affect a guarantor's liability."); *see* La. Civ. Code art. 3046, at comment (b) ("A discharge in bankruptcy does not operate as or have the effect of a payment. Bankruptcy does not extinguish the debt but is simply a bar to the enforcement of it. It is this very contingency, the insolvency of the debtor, that necessitates suretyship."); *see also Browning Seed, Inc. v. Bayles*, 812 F.2d 999, 1004 (5th Cir. 1987) ("Bankruptcy law likewise permits a guarantor to be sued in state court while pending bankruptcy proceedings against the principal debtor preclude suit in state court against the debtor."); *R.I.D.C. Indus. Dev. Fund v. Snyder*, 539 F.2d 487, 490, FN 3 (5th Cir. 1976) ("The bankruptcy court can affect only the relationships of debtors and creditor. It has no power to affect the obligations of guarantors.").

[46] *See* Ex. 9, Transcript of April 23, 2025 Hearing, at 1-65:2 to 1-65:12 (Direct testimony of Mr. Elliot) (opining that guaranties are "almost required for most commercial lenders that are involved in the restaurant space[.]").

undermines the efficacy and efficiency of every commercial guaranty obtained by every lender within the Bankruptcy Court's jurisdiction.

*The Non-Debtor Injunction is contrary to the Supreme Court's decision in Purdue Pharma.*

In *Purdue Pharma*, the Supreme Court made clear that only debtors in bankruptcy are entitled to discharge and that bankruptcy courts must look at the *effect* of injunctive provisions in a chapter 11 plan to determine if they are permitted by the Bankruptcy Code (and to ignore the language utilized by the plan proponents to justify them).[47] Under *Purdue Pharma* and the evidence, the Non-Debtor Injunction clearly contradicts provisions of the Bankruptcy Code.

The debtor in *Purdue Pharma* and its owners, the Sackler family, were made defendants in thousands of cases for damages from OxyContin related overdoses. Purdue Pharma filed for chapter 11 bankruptcy and the Sackler family agreed to help fund its reorganization plan by contributing to the funding of the debtor's bankruptcy estate in exchange for a plan provision permanently "releasing" them of all liability and enjoining lawsuits against them.[48] To sides-step the debtor-only discharge of § 524(e), the Sacklers argued that the injunction was a "release," not a "discharge," and so it was authorized by § 105(a).[49] The Supreme Court flatly rejected their

---

[47] *Purdue Pharma*, 603 U.S. at 223 ("Whatever limits the code imposes on debtors and discharges mean nothing, they say, because the Sacklers seek a "release," not a "discharge." … But word games cannot obscure the underlying reality.").

[48] *Id.* at 211. The Guarantors, in contrast, do not provide funding for the Debtor's Plan.

[49] *Id.* at 223, 216, FN 2.

argument, holding that the Bankruptcy Code "does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a non-debtor without the consent of affected claimants."[50]

Although *Purdue Pharma* court limited its holding to the issue before it, the permanent non-debtor injunction, its rule and analysis apply here with equal force. The Supreme Court first found that the Sackler's injunction had the effect of discharging non-debtors in violation of § 524(e).[51] Turning to permissive plan provisions, the court looked to § 1123 and found it does not expressly authorize post-confirmation injunctions discharging non-debtors.[52] The ultimate issue, then, was whether the Sackler's injunction was permitted by the general grant of authority in § 1123(b)(6), allowing a plan to contain "any other appropriate provision not inconsistent with the applicable provisions of this title."[53] Holding the injunction was unlawful, the Supreme Court concluded that "the catchall cannot be fairly read to endow a bankruptcy court with the 'radically different' power to discharge the debts of a non-debtor without the consent of affected non-debtor claimants."[54]

---

[50] *Id.* at 227. The only exception is the Code's limited authorization of injunctions in asbestos cases under 11 U.S.C. § 524(g), which does not apply here. *Id.* at 222 (explaining that "the code does authorize courts to enjoin claims against third parties without their consent, but does so in only one context," asbestos-related bankruptcies).

[51] *Id.* at 214-15.

[52] *Id.* at 215-21 (*citing* 11 U.S.C. § 1123).

[53] *See id.*

[54] *Id.* at 218.

Applying *Purdue Pharma* to the Non-Debtor Injunction, it clearly contradicts provisions of the Bankruptcy Code. The effect of the Non-Debtor Injunction is to stay proceedings against non-debtors during the course of the Plan. Section 362(a) limits the stay to debtors, so the Non-Debtor Injunction was purportedly authorized pursuant to the general authority granted bankruptcy courts under § 105(a).[55] The Code provision which maintains the stay post-confirmation, § 362(c)(2)(c), applies to the debtor's stay under § 362(a) and contains no reference to § 105(a) non-debtor injunctions.[56] Because no Bankruptcy Code provision expressly permits extension of the automatic stay to protect non-debtors after confirmation of the plan, and because doing so is radically different from the provisions of § 362, the Non-Debtor Injunction is unlawful under the Bankruptcy Code and *Purdue Pharma*, and cannot be included in the Plan.

*The Non-Debtor Injunction is contrary to the Fifth Circuit's decision in Highland II, et al.*

The Fifth Circuit has long held that bankruptcy courts may not confirm a chapter 11 plan that non-consensually releases non-debtors from liability related to a bankruptcy proceeding.[57] This was reaffirmed post-*Purdue Pharma* in *Highland II*, where the Fifth Circuit noted that "[e]ven before *Purdue Pharma,* this court had

---

[55] *See* 11 U.S.C. § 362; *See* Ex. 2, Opinion [BR. Doc. 326] at p. 16, 2025 WL 1400915, at *10 .

[56] *See* 11 U.S.C. § 362.

[57] *Highland II*, 132 F.4th at 358; *In re Pac. Lumber Co.*, 584 F.3d at 252 (Fifth Circuit law operates "broadly to foreclose non-consensual non-debtor releases and permanent injunctions"); *Zale Corp.*, 62 F.3d at 760 ("… we must overturn a § 105 injunction if it effectively discharges a nondebtor".).

held … that any provision that non-consensually releases non-debtors from liability for debts and/or conduct, **and any injunction that acts to shield non-debtors from such liability,** must be struck from a bankruptcy confirmation plan."[58] In *Highland II*, the Fifth Circuit invalidated a post-confirmation injunction because it provided extra-Codal protections to non-debtors not entitled to discharge in bankruptcy.[59]

The plan provision at issue in *Highland II* was a "gatekeeper clause" which *preliminarily* enjoined the debtor's creditors from pursuing claims against "Protected Parties," defined extremely broadly, until the claims were approved by the bankruptcy court.[60] The Fifth Circuit affirmed that "gatekeeper clauses" are generally permitted, but held that they cannot be used "to protect non-debtors from liability via a pre-filing injunction."[61] Thus, the Fifth Circuit held that gatekeeper clauses cannot protect persons not entitled to discharge, even preliminarily.[62]

Although the Non-Debtor Injunction is not a gatekeeper clause, it must still be struck from the Plan. The Opinion attempts to distinguish the Non-Debtor Injunction from the ones prohibited by *Purdue Pharma* and *Highland II* by characterizing it as a "temporary" preliminary injunction.[63] A three-year injunction,

---

[58] *Highland II*, 132 F.4th at 359 (*citing, e.g., In re Pac. Lumber Co.*, 584 F.3d at 252) (emphasis added).

[59] *Id.* at 362.

[60] *See id.* at 356. The Fifth Circuit defined the gatekeeper clause as a "pre-filing injunction." *Id.* at FN2.

[61] *Id.* at 359.

[62] *Id.* at 362. In *Highland I*, the bankruptcy court invalidated the discharge clause because its definition of "Exculpated Parties" exceeded the discharge allowed under § 524(e). *See* Opinion [BR. Doc. 326] at pp. 6-8, 2025 WL 1400915, at *4-5 (discussing *NexPoint Advisors, L.P. v. Highland Capital Mgmt., L.P.* (*In re Highland Capital Mgmt., L.P.*), 48 F.4th 419, 435–38 (5th Cir. 2022) ("*Highland I*")).

[63] *See* Ex. 9, Transcript of April 23, 2025 Hearing, at 1-39:3 (the Bankruptcy Court, discussing the Non-Debtor

while not lasting forever, is excessive in duration compared to the temporary stay extensions granted by courts for non-debtors during bankruptcy proceedings.[64] To the extent the Bankruptcy Court confirmed the Non-Debtor Injunction based upon its finding that the three-year Non-Debtor Injunction was "temporary," the court committed reversible error.

Regardless, the effect of the *Highland II* gatekeeper clause was to enjoin claims against non-debtors on a preliminary basis, until approved by the Court. Therefore, the Fifth Circuit's application of *Purdue Pharma* clearly extends beyond permanent injunctions. Moreover, the injunction in this case and the one in *Highland II* both unfairly afford non-debtors benefits which are solely intended for debtors under the Code.

Thus, the Non-Debtor Injunction is contrary to long-standing Fifth Circuit law, which *Purdue Pharma* has only made clearer. This was the conclusion correctly reached in the recent *In re Gulf South Energy Services, LLC* ("*Gulf South*"), decision from the Bankruptcy Court for the Western District of Louisiana. In that case, the debtor's proposed plan contained a non-consensual, non-debtor, post-confirmation injunction similar to the one at issue here, to which the United States Trustee

---

Injunction, "we are dealing with a very temporary condition[.]").

[64] *In re Lyondell Chem. Co.*, 402 B.R. 571, 587 (Bankr. S.D.N.Y. 2009) (60-day non-debtor stay extension was warranted to permit plan negotiations); ; *In re Onyx Site Servs., LLC*, 3:24-AP-00070-JAB, 2024 WL 4132150, at *1 (Bankr. M.D. Fla. Aug. 22, 2024) (slip opinion) (granting 63-day preliminary injunction in early stages of Subchapter V bankruptcy prior to plan confirmation stage); *In re Diocese of Buffalo, N.Y.*, 663 B.R. at 201 (addressing 60-day pre-confirmation injunction request); *Parlement Techs.*, 661 B.R. at 731 (addressing 60-day stay).

objected.[65] At the evidentiary hearing to consider confirmation of the debtor's plan, the court sustained the objection, ordering that it would confirm the plan if the non-debtor injunction was removed from the plan in its entirety.[66] In compliance with Judge Hodge's Order, the debtor filed a modified plan which removed the offensive non-debtor injunction, which was then confirmed.[67]

*Any reliance on In re Hal Luftig should be rejected.*

The sole case cited for the proposition that *Purdue Pharma* does not prohibit the Non-Debtor Injunction is *In re Hal Luftig Co., Inc.*, 667 B.R. 638, 654 (Bankr. S.D.N.Y. 2025) ("*Hal Luftig*"), a post-*Purdue Pharma* case is currently on appeal because of the non-debtor injunction in its plan. *Hal Luftig* is wrongly decided, its reasoning is fatally flawed, and it cannot serve as authority to disregard the *Purdue Pharma* court's clear instructions to look beyond labels used by plan proponents to avoid contrary provisions in the Bankruptcy Code.

In *Hal Luftig,* the United States Bankruptcy Court for the Southern District of New York confirmed a chapter 11 plan which enjoined, during the life of the five-year plan, actions against the debtor's only shareholder, Mr. Luftig, who was solely and uniquely responsible for the debtor's operations.[68] Early in the proceeding, the

---

[65] *See In re Gulf South Energy Services, LLC*, 24-10178 (Bankr. W.D. La.), at Trustee's Objection to Plan dated January 10, 2025 [R. Doc. 252 therein].

[66] *Id*. at Judge Horde's Order [R. Doc. 275 therein].

[67] *See In re Gulf South Energy Services, LLC*, 24-10178, 2025 WL 510549 (Bankr. W.D. La. Feb. 14, 2025) (sustaining objection and confirming plan without unlawful injunction.) [R. Doc. 280 therein].

[68] *In re Hal Luftig Co., Inc.,* 667 B.R. 638, 654 (Bankr. S.D.N.Y. 2025).

bankruptcy court granted the debtor's motion to extend the automatic stay to protect Mr. Luftig from enforcement of an arbitration award held by the debtor's principal creditor.[69] The proposed plan extended all injunctions or stays existing at the time of confirmation until the closing of the case.[70] The court noted that the stay's extension to protect Mr. Luftig *during the proceeding* was an important fact.[71] In Debtor's case, the stay was not extended to the Guarantors pre-confirmation.

To support the extension post-confirmation, the *Hal Luftig* court held that the five-year, post-confirmation injunction was authorized by § 362(c)(2), even though that provision only provides that a stay under § 362(a) can continue post-confirmation without any reference to non-debtor injunctions issued under § 105(a).[72] To avoid *Purdue Pharma*, the *Hal Luftig* court found authority for the injunction in *In re Parlement Techs., Inc.*, 661 B.R. 722, 724 (Bankr. D. Del. 2024).[73] Crucially, *Parlement Techs*. denied a sixty-day pre-confirmation request to extend the stay to non-debtors and held that *Purdue Pharma* permits *pre-confirmation*

---

[69] *Id.* at 650.

[70] *Id.* at 648. Unlike in the present case, the plan also expressly required Mr. Luftig to make specific contributions to the debtor during the plan and subordinated his related reimbursement claims to those of the debtor's existing creditors. *Id.* at 649-50, FN 11.

[71] This is the first fact cited by the Luftig court in support of the post-confirmation, non-debtor injunction protecting Luftig. *Id.* at 659 ("Unlike the non-debtor stay extensions that many cases have examined, the Luftig Stay Extension differs in one significant aspect: the Debtor here is seeking, as part of its plan, to extend the duration of the Luftig Stay — an existing non-debtor stay extension — for the life of its Third Amended Plan.").

[72] *Id.* at 660 ("The Court concludes that, under the facts and circumstances of this case as described herein, the non-debtor stay extension should not be for a limited duration and may extend for the life of the plan, consistent with Bankruptcy Code § 362(c)(2)").

[73] *Id.* at 659 ("... many courts that have written on non-debtor stay extensions, including the few that have done so post-*Purdue Pharma*, have reviewed such stay extensions as temporary injunctive relief to facilitate negotiations among the parties.") (*citing Parlement Techs*, 661 B.R. at 724).

injunctions giving _short-term_ protections to non-debtors to allow for plan negotiations.[74] The few other post-*Purdue Pharma* cases referenced in *Hal Luftig* similarly "reviewed …stay extensions as temporary injunctive relief to facilitate negotiations among the parties" pre-confirmation.[75] As did the pre-*Purdue Pharma* cases cited in *Hal Luftig*.[76] Neither the Debtor in this case, nor the *Hal Luftig* court has cited any other post-*Purdue Pharma* case which held that § 105(a) permits confirmation of chapter 11 plans with injunctive provisions that protect the debtor's non-debtor guarantors for years after the plan is confirmed.[77]

_Zale Corp. does not permit non-debtor injunctions post-confirmation._

　　The pre-*Purdue Pharma* authority cited as justification for the Non-Debtor

---

[74] *Parlement Techs*, 661 B.R. at 724. The court rejected as bases for the stay: (i) the debtors' indemnity obligations to the non-debtors, (ii) the debtor would incur costs because of discovery in the action against the non-debtors, (iii) the non-debtors would be distracted by discovery in the action against them, and (iv) the risk that judgment in case against the non-debtors will serve as collateral estoppel prejudicing the debtor. *Id.* at 729-31.

[75] *Hal Luftig*, 667 B.R. at 659 (*citing Purdue Pharma L.P., v. Commonwealth of Massachusetts* (*In re Purdue Pharma L.P.*), 666 B.R. 461, 469 (Bankr. S.D.N.Y. 2024) (pre-confirmation injunction extended for three-weeks to permit further negotiations on plan); *Coast to Coast Leasing, LLC v. M&T Equip. Fin. Corp.* (*In re Coast to Coast Leasing, LLC*), 661 B.R. 621, 624 (Bankr. N.D. Ill. 2024) (granting a two-week, pre-confirmation restraining order).

[76] *Id.* at 657-60 (*citing Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282 (2d Cir. 2003) (pre-confirmation "stay extension," concluding "[t]he automatic stay can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an **immediate** adverse economic consequence for the debtor's estate.")) (emphasis added)); *id.* at 657, 661 (*citing In re Durr Mech. Constr., Inc.*, 604 B.R. 131, 136 (Bankr. S.D.N.Y. 2019) (seeking preliminary injunctions on guaranties of claims against debtor **until confirmation of the plan**)); *id.* at 658, FN 28 (*citing In re Calpine Corp.*, 365 B.R. 401, 408 (S.D.N.Y. 2007) (affirming pre-confirmation non-debtor injunction, cautioning that "[e]ven under this narrow exception, the threat to the reorganization process must be imminent, substantial and irreparable."); *In re Lyondell Chem. Co.*, 402 B.R. at 587 (60-day non-debtor stay extension warranted to permit plan negotiations)).

[77] *See In re Diocese of Buffalo, N.Y.*, 663 B.R. 197, 201 (Bankr. W.D.N.Y.2024) (denying pre-confirmation injunction because it would not reasonably permit succesful plan negotiations); *See also In re Onyx Site Servs., LLC*, 2024 WL 4132150 at *1 (granting 63-day preliminary injunction in early stages of Subchapter V bankruptcy prior to plan confirmation stage); *State of Maryland v. Purdue Pharma L.P.* (*In re Purdue Pharma L.P.*), 19-23649 (SHL), 2024 WL 4894349, at *2 (S.D.N.Y. Nov. 26, 2024) (slip copy) ("The Preliminary Injunction was entered for the express purpose of giving the Debtors time to come up with a plan of reorganization").

Injunction is *dicta* from *Zale Corp.*[78] To the extent *Zale Corp.*'s allowance of "temporary" non-debtor injunctions in "unusual circumstances" was ever the law, the case does not allow them post-confirmation.

The facts of *Zale Corp.* are highly distinguishable and the injunction at issue in that case is distinguishable from this case.[79] The Fifth Circuit ultimately found the injunction unlawful because its effectively discharged bad faith and breach of contract claims by and against non-debtors ***and*** because the debtor sought to "backdoor" the injunction through a plan provision without following the adversary proceeding procedure then-mandated by Federal Rule of Bankruptcy Procedure 7001 for the issuance of a preliminary injunction.[80]

In *dicta*, however, the Fifth Circuit stated that a temporary injunction of third-party actions "may be proper in unusual circumstances."[81] The Opinion notes that the *Zale Corp.*'s *dicta* relied on three cases, *A.H. Robins Co. v. Piccinin*,[82] *Patton v.*

---

[78] *Zale Corp.*, 62 F.3d at 761.

[79] The injunction at issue sought to permanently enjoin actions against certain directors and officers of the debtor and the debtor's D&O liability insurer who reached a settlement whereby the insurer agreed to tender the policy limit of $10,000,000 to the debtor to help fund the reorganization in exchange for a release of the settling parties, including for actions taken in negotiating the settlement. *See Zale Corp.*, 62 F.3d at 749-50.

[80] *Id.* ("The settling parties' stated purpose in seeking the injunction was to prevent NUFIC and Feld from bringing or pursuing claims against CIGNA for bad faith and breach of contract."). *See id.* at 762-63.

[81] The *Zale Corp.* court identified the "unusual circumstances" as: "1) when the nondebtor and the debtor enjoy such an identity of interests that the suit against the nondebtor is essentially a suit against the debtor, and 2) when the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization." *Id.* at 761.

[82] Ex. 2, Opinion [BR. Doc. 326] at pp. 11-12, 2025 WL 1400915 at *8 (*citing A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1003-06 (4th Cir. 1986) ("*A.H. Robins I*"). *A.H. Robins I* does not authorize post-confirmation non-debtor injunctions. In *A.H. Robins I*, the debtor was made defendant in "an avalanche" of products liability actions in numerous state and federal courts. *A.H. Robins I*, 788 F.2d at 996. Soon after the debtor filed for chapter 11 bankruptcy, plaintiffs in some of those actions moved to sever the debtor and continue the litigations against the debtor's insurers and other co-defendants. *Id.* at 966-67. Very early in the proceeding, the bankruptcy granted the debtor's motion for a temporary restraining order and then a preliminary injunction enjoining those litigations because they would have

*Bearden*,[83] and *S.E.C. v. Drexel Burnham Lambert Grp., Inc.*,[84] none of which authorize multi-year post-confirmation non-debtor injunctions protecting the debtor's guarantors. The two pre-*Purdue Pharma* cases cited by the Bankruptcy Court in the Opinion which relied on *Zale Corp.*'s "unusual circumstances" test, *In re Seatco,* 257 B.R. 469, 476-77; (Bankr. N.D. Tex. 2001) and *In re Bernhard Steiner Pianos USA Inc.,* 292 B.R. 109, 117-18 (Bankr. N.D. Tex. 2002), specifically relied on *Zale Corp.*'s suggestion that the authority for such injunctions derives from § 105(a).[85] But, as the Supreme Court clarified in *Purdue Pharma,* § 105(a) is not a freestanding basis for non-consensual, post-confirmation, non-debtor injunctions that are not authorized by another provision in the Bankruptcy Code.[86]

---

an adverse effect on the debtor's estate **and** because the injunction would foster succesful plan negotiations. *See Id.* at 1009, 998 (relying in part on *Matter of Holtkamp,* 669 F.2d 505, 508 (7th Cir. 1982), which held stay extensions to non-debtors sometimes warranted "to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor."). Neither justification applies here.

[83] Ex. 2, Opinion [BR. Doc. 326] at p. 11, 2025 WL 1400915 at *8 (*citing Patton v. Bearden*, 8 F.3d 343 (6th Cir. 1993)). *Patton* relies on *A.H. Robins I* and does not authorize post-confirmation non-debtor injunctions. In *Patton,* the district court granted summary judgment against the general partners of a partnership that had recently filed for bankruptcy and the partners appealed, in part, based on an alleged stay violation. *Patton,* F.3d 343 at 345. The *Patton* court held there was no stay violation, reasoning that "[e]ven if we were to adopt the unusual circumstances test, the bankruptcy court would first need to extend the automatic stay under its equity jurisdiction pursuant to 11 U.S.C. § 105. Moreover, the Beardens have not brought forth any evidence of unusual circumstances which would justify extending the automatic stay to their protection." *Id.* at 349. The only relevance to this matter is the *Patton* court's finding that "mere reliance" on status as a general partner is insufficient to warrant protection from a pre-confirmation injunction. *Id.*

[84] Ex. 2, Opinion [BR. Doc. 326] at p. 11, 2025 WL 1400915 at *8 (*quoting S.E.C. v. Drexel Burnham Lambert Grp., Inc. (In re Burnham Lambert Grp., Inc.)*, 960 F.2d 285, 289 (2d Cir. 1992)) *In re Drexel* relies on abrogated law and the "injunction" at issue is nothing like the one included in the Plan. *See In re Drexel*, 960 F.2d at 289 (citing *In re A.H. Robins Co., Inc.*, 880 F.2d 694, 702 (4th Cir.1989) ("*A.H. Robins II*"), abrogated by *Purdue Pharma*, 603 U.S. 204. *In re Drexel* affirmed the district court's approval of $150 million class action settlement agreement relating to pre-petition securities fraud claims against a chapter 11 debtor and the injunction prohibited **_any future_** actions against the debtor's directors and officers who were already subject to separate pending litigation by creditors. *Id.* at 289, 293. Even if *In re Drexel* remains good law, it does not authorize the Non-Debtor Injunction.

[85] *Seatco,* 257 B.R. at 476; *Steiner,* 292 B.R. at 117.

[86] *Purdue Pharma*, 604 U.S. at 216, FN 2; *see also Law v. Siegel,* 571 U.S. 415, 421; 134 S.Ct. 1188, 1194; 188 L.Ed.2d 146 (2014) ("whatever equitable powers remain in the bankruptcy courts must and can only be exercised

Furthermore, in *Highland II* the Fifth Circuit specifically cited to *Zale Corp.* for the clear legal pronouncement that "**a bankruptcy court that approves a non-consensual release and/or injunction protecting non-debtors 'exceed[s] its powers under § 105.'"**[87] The Fifth Circuit did not mention any notion of a permissive "temporary" non-debtor injunction in "unusual circumstances" created through *Zale Corp.*'s dicta. Thus, continued reliance upon such dicta must end.

For the foregoing reasons, the Bankruptcy Court committed reversible error in holding that it was authorized to confirm the Plan with the Non-Debtor Injunction despite the overwhelming Supreme Court and Fifth Circuit precedent to the contrary.

## II.    The Bankruptcy Court committed reversible error in finding the Debtor's evidence demonstrated "unusual circumstances" which warrant the Non-Debtor Injunction.

Under *Zale Corp.*'s unusual circumstances test (1) the non-debtor and the debtor must "enjoy such an identity of interests that the suit against the non-debtor is essentially a suit against the debtor," and (2) the actions enjoined must "have an adverse impact on the debtor's ability to accomplish reorganization."[88] Section 105(a) injunctions must also pass the general test for preliminary injunctions.[89] "Preliminary injunctive relief is an extraordinary remedy, which should be granted only in limited circumstances," and the party seeking one "has a substantial

---

within the confines of the Bankruptcy Code") (internal citation omitted).

[87] *Highland II*, 132 F.4th at 359 (*citing Zale Corp.*, 62 F.3d at 761).

[88] *See* Ex. 2, Opinion [BR. Doc. 326], 2025 WL 1400915, at *7 (citing *Zale Corp.*, 62 F.3d at 761).

[89] *Id*.

burden."[90]

Essentially the Bankruptcy Court found "unusual circumstances" worthy of the Non-Debtor Injunction because the Guarantors guaranteed the Debtor's pre-petition debts to Woodvine and were *expected* to "back" the Debtor's future loans.[91] These facts describe a routine lending practice when a small business takes out a commercial loan.[92] If the circumstances of this case are "unusual," *Zale Corp.*'s "identity of interest" element will be satisfied any time a § 105(a) injunction benefits a guarantor, and the "adverse effect" element will be satisfied anytime the debtor might need to borrow money from a commercial lender during or after the plan. The circumstances are not unusual and the Debtor did not submit any evidence that this is an unusual practice.

Numerous other courts have rejected similar facts as a basis for a § 105(a) non-debtor injunction. *In re Couture Hotel Corporation* held that "ownership coupled with a guaranty is not sufficient to satisfy the identity of interest" requirement of *Zale Corp.*, because "[g]ranting an injunction on those grounds

---

[90] *Parlement Techs.*, 661 B.R. at 728

[91] *See* Ex. 2, Opinion [BR. Doc. 326], 2025 WL 1400915, at *9; Ex. 9, Transcript of April 23, 2025 Hearing, at 1-24:9 to 1-24:20.

[92] The Debtor's own expert testified that most lenders will not loan money to a business money if there is a risk of non-payment without a personal guaranty from the business's owners. Ex. 9, Transcript of April 23, 2025 Hearing, at 1-65:2 to 1-65:12 (Direct testimony of Mr. Elliot) (testifying that"shareholder backing" of loans is "almost required for most commercial lenders that are involved in the restaurant space[.]"); *see also id.* at 1-40:24 to 1-41:5, 1:41:11 to 1-41:13 (Argument by Debtor's counsel) ("No bank is going to issue a loan for $1 million, or whatever it ultimately ends up being, if the shareholders and the people who are actually invested in the business aren't going to back it. I mean, they're just not.").

would make third party plan injunctions commonplace, which is clearly the incorrect outcome under Fifth Circuit precedent."[93] *In re Combustion Eng'g, Inc.*, held that non-debtors cannot "bootstrap" injunctive protections unfounded in the Bankruptcy Code by structuring the plan in such a way that it depends upon their third-party contributions.[94] *Parlement Techs.* held that the indemnification rights of guarantors are not, without more, a sufficient basis to conclude that "minimizing the debtor's indemnity obligation is critical to the success of a bankruptcy case."[95]

As an additional basis, the Bankruptcy Court found unusual circumstances because Moore is involved in the Debtor's daily operations so any guaranty action against him would divert his time, attention, and resources from the Debtor's reorganization efforts.[96] However, Beach and Miller are not involved in the Debtor's daily operations, so this justification cannot apply to them.[97] Further, *Parlement*

---

[93] *In re Couture Hotel Corporation,* 536 B.R. 712 (Bankr. N.D. Texas, Dallas Division 2015). The debtor sought a "temporary" injunction intended to protect the debtor's guarantors during the plan. The *Couture* Court noted that it "disagrees that ownership coupled with a guaranty is sufficient to satisfy the identity of interest" requirement and further held that "this type of overlap between shareholder and guarantors exists in a significant number of bankruptcy cases involving closely-held corporations." *Id.* at 752.

[94] *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 229 (3d Cir. 2004), *as amended* (Feb. 23, 2005). In an asbestos case, the plan included a provision with an expanded channeling injunction that protected non-debtors who promised to contribute to the settlement fund but fell outside the scope of § 524(g)'s protections for third-parties. *Id.* at 228 At issue before the Third Circuit was whether the bankruptcy court had subject matter jurisdiction to enter issue the injunction under § 105(a). *Id.* at 233. Invalidating the provision, the court rejected the debtor's attempt to bootstrap jurisdiction where it did not rest by structuring the plan to require non-debtor contributions to fund the plan because "[i]f that were true, a debtor could create subject matter jurisdiction over any non-debtor third-party by structuring a plan in such a way that it depended upon third-party contributions." *Id.* at 228.

[95] *Parlement Techs.*, 661 B.R. at 729.

[96] *See* Ex. 2, Opinion [BR. Doc. 326], 2025 WL 1400915, at *9.

[97] *See Patton*, 8 F.3d at 349 ("mere reliance" on status as a general partner is insufficient to warrant protection from a pre-confirmation injunction") (relied upon by *Zale Corp.*, 62 F.3d at 746); *Parlement Techs.* 661 B.R. at 730-31 (holding that minimizing litigation distractions of non-directors and non-officers insufficient).

*Techs.* expressly held that minimizing litigation costs is insufficient to enjoin litigation against non-debtors.[98]

Moreover, it makes no sense because the Plan permits claims against the Guarantors for tort and fraud claims and for the Unaddressed Interest.[99] Tort or fraud cases, even against an insurer, are far more distracting than actions to enforce a guaranty and they will necessitate the Debtor's participation in discovery. And in this case, the Guarantors are indistinguishable from the Debtor's liability insurers because a judgment in either case will not automatically impinge on the Debtor's assets, so Woodvine should be permitted to pursue direct actions against them on the Guaranties.[100] Further, the distraction of defending a guaranty action is the same whether it seeks full payment or accrued interest. Thus, the Bankruptcy Court committed reversible error in finding "unusual circumstances" warranted issuance of the Non-Debtor Injunction as part of the Plan.

## III.    The Bankruptcy Court committed reversible error in finding the Debtor's evidence satisfies the four-prong preliminary injunction test additionally required under 11 U.S.C. § 105(a).

The test for a preliminary injunction considers four factors:

(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) the

---

[98] *Parlement Techs.* 661 B.R. at 730 (*citing Quarrato v. Madison Glob. LLC,* 2023 WL 7212173, at *2 (S.D.N.Y. Nov. 2, 2023); *In re Davis,* 691 F.2d 176, 178 (3d Cir. 1982)).

[99] *See* Ex. 2, Opinion [BR. Doc. 326] at p. 15, 2025 WL 1400915, at *10 ("… Woodvine is free right now to pursue any amounts owing to it pursuant to the guaranties that are not being paid under the Plan.").

[100] *See Wedgeworth v. Fibreboard Corp.,* 706 F.2d 541, 546-47 (5th Cir. 1983) (denying indefinite stay extension to insurers of debtor when direct action against the insurers did not "automatically impinge" debtor's assets).

threatened injury if the injunction is denied outweighs the threatened harm the injunction may cause to the party opposing the injunction, and (4) the issuance of an injunction will not disserve the public interest.[101]

The facts do not support the first two factors. There is no substantial threat of irreparable injury because the Non-Debtor Injunction is based upon a hypothetical, which is based upon another hypothetical, as the Opinion notes that the Guarantors are ***expected*** to "back" the loan for the future Balloon Payment and found that an action against any of the Guarantors "***could*** negatively affect the strength of any guaranty provided and discourage any future infusion of capital or financing[.]"[102]

Moreover, post-*Purdue Pharma*, the outcomes that constitute "success on the merits" are:

> (a) providing the debtor's management a breathing spell from the distraction of other litigation is necessary to permit the debtor to focus on the reorganization of its business or (b) because it believes the parties may ultimately be able to negotiate a plan that includes a consensual resolution of the claims against the non-debtors.[103]

Here, the Plan is confirmed so the second basis for "success on the merits" is moot. As to the first basis, Beach and Miller are not involved in the Debtor's daily operations, so their "focus" is not necessary for the Plan's performance. Moreover, payment by the Guarantors during the Plan does not put the Debtor's reorganization

---

[101] Ex. 2, Opinion [BR. Doc. 326] at p. 15, 2025 WL 1400915 at *9.

[102] *See* Ex. 2, Opinion [BR. Doc. 326] at p. 11, 2025 WL 1400915, at *9 (emphasis added); Ex. 20, Transcript of April 30, 2025 Hearing, at 2-30:1 to 2-30:23.

[103] *Parlement Techs.*, 661 B.R. at 727-28; *see also Hal Luftig*, 667 B.R. at 659 (adopting analysis of *Parlement Techs.*, 661 B.R. at 724, on meaning of "success on the merits" post-*Purdue Pharma*).

at risk. Such a payment will reduce the amount of the post-Plan Balloon Payment, making it easier for the Debtor to obtain financing. The Debtor's insiders, not its outside lenders, should bear the burden of financing the Plan and the risks of non-performance. [104] Woodvine's injunction does the opposite.

Moreover, it was the Debtor's burden of proof to provide evidence that the Guarantors had contractually agreed to fund the Balloon Payment and the Guarantors would not secrete or otherwise encumber their assets. No such evidence was provided. In fact, the Guarantors are not obligated to provide any financing or funds whatsoever to the Plan. Essentially, the Guarantors are reaping the benefits of the Debtor's bankruptcy without having to file bankruptcy or even contribute financially to the Plan.

Debtor's evidence also fails the third factor. The Bankruptcy Court concluded:

---

[104] *See Matter of Fabricators, Inc.*, 926 F.2d 1458, 1465, 1469 (5th Cir. 1991) ("A claim arising from the dealings between a debtor and an insider is to be rigorously scrutinized by the courts. … When an insider makes a loan to an undercapitalized corporation, a court may recast the loans as contributions to capital. The ability to recharacterize a purported loan emanates from the bankruptcy court's power to ignore the form of a transaction and give effect to its substance.") (internal citations omitted.). In *Fabricators*, an insider's secured loans to the debtor were subordinated to unsecured claims because, *inter alia*, the insider induced loans from outside lenders when it knew the debtor was in financial trouble and because the loans were more akin to capital contributions as the insider made the loans in order to realize future profits at a time when the debtor was undercapitalized. *See id.* at 1462, 1467, 1469-70. In this instance, the Guarantors are liable amongst themselves for their pro-rata interest in the Debtor. La. Civ. Code art. 1804 ("Among solidary obligors, each is liable for his virile portion. …"); *id.* at art. 1806 ("A loss arising from the insolvency of a solidary obligor must be borne by the other solidary obligors in proportion to their portion."). Any payment to Woodvine is more akin to a capital contribution to the Debtor intended to finance the Debtor's reorganization. Should they demand repayment, the Guarantors' agreement to forebear can be considered a loan to the Debtor. Either way, it is far more equitable for the Guarantors, *i.e.*, the persons who own and will benefit from the reorganized Debtor, to bear the burden of financing the Plan and the risk of non-performance. Perhaps the court is assuming that the Guarantors' payment to Woodvine will render them insolvent and unable to possibly "back" the Debtor's reorganization efforts if required to do so (they are not under the Plan). There was certainly no evidence submitted that the Guarantors finances are such that they cannot afford to pay their obligations to Woodvine and also "back" the Debtor if required in the future.

"[t]he only harm to Woodvine is that it may be forced to accept Plan payment terms that it does not like," which it found to be minimal "compared to the harm the Debtor faces if the temporary injunction is not granted: the Debtor forfeits its ability to reorganize."[105] The Non-Debtor Injunction alters Woodvine's contracts with the Guarantors. Woodvine is barred from obtaining judgments against them for at least three years and therefore will remain an unsecured creditor of the Guarantors for at least the life of the Plan. During that time, the Guarantors can place their assets outside of Woodvine's reach.

Last, the Bankruptcy Court's analysis of the last factor ignores public interests and focuses only on the parties to the case.[106] As noted above, this case is far from unusual.[107] If a non-consensual, post-confirmation, non-debtor injunction lasting for years is warranted here, it may be warranted in many chapter 11 cases. As also noted above, the Non-Debtor Injunction strikes at the efficacy and the efficiency of personal guaranties.[108] **The Non-Debtor Injunction distorts the concept of conventional solidarity beyond recognition and undermines one the most fundamental sources of security available to lenders**.[109]

---

[105] *See* Ex. 2, Opinion [BR. Doc. 326] at p. 15, 2025 WL 1400915, at *10 .

[106] *See* Ex. 2, Opinion [BR. Doc. 326] at pp. 15-16, 2025 WL 1400915, at *10.

[107] *Couture Hotel Corporation,* 536 B.R. at 752 ("this type of overlap between shareholder and guarantors exists in a significant number of bankruptcy cases involving closely-held corporations.").

[108] *NCNB Texas Nat. Bank,* 11 F.3d at 1266.

[109] *See* La. Civ. Code arts. 1794, 1795, 1800, 1806.

**IV.    The Bankruptcy Court committed reversible error in finding the requirements of § 1191(b) were satisfied and by confirming the Plan without fair and equitable protections mitigating the risks borne by Woodvine because of the Non-Debtor Injunction.**

The Plan should not have been confirmed because it does not meet the requirements of § 1191(b). Section 1191(b) allows for confirmation of a plan over the objection of an impaired creditor when the debtor can show that "the plan does not discriminate unfairly, and is fair and equitable" to such creditor.[110] Here, the Plan, at minimum, drastically affects Woodvine's contractual rights against the Guarantors without Woodvine receiving any protections against the Guarantors' potential change in circumstances. For example, the Plan requires no commitment from the Guarantors to guaranty the Balloon Payment's financing, it does not prohibit the Guarantors from secreting assets and placing them out of Woodvine's reach, and does not toll Woodvine's ability to claw-back prejudicial transfers.[111] The Plan unfairly places Woodvine at substantial risk of non-payment and prevents Woodvine from taking actions to mitigate such risks. Thus, the Bankruptcy Court committed reversible error in finding the Plan satisfied the requirements of § 1191(b) and confirming the Plan over Woodvine's objection with the Non-Debtor Injunction without providing Woodvine fair and equitable protections.

---

[110] *See* Ex. 2, Opinion [BR. Doc. 326] at p. 4, 2025 WL 1400915, at *2 (*citing* 11 U.S.C. § 1191(b).

[111] *E.g.*, a revocatory action under La. Civ. Code art. 2036 must be filed within one year from the time an obligee learned or should have learned of an act of an obligor causing or increasing its insolvency, or the result of the failure to act, which the obligee seeks to annul, but never after three years from the date of that act or result. *See* La. Civ. Code arts. 2036, 2041.

## <u>CONCLUSION</u>

The Non-Debtor Injunction is not permitted by the Bankruptcy Code and is prohibited under the Fifth Circuit's *Highland II* decision*,* following application of the Supreme Court's ruling in *Purdue Pharma*. Judge Hodge in *Gulf South* correctly struck a similar injunction from the debtor's plan prior to confirmation. Instead of following *Highland II, Purdue Pharma,* and *Gulf South,* the Bankruptcy Court incorrectly relied upon pre-*Purdue Pharma* dicta in order to approve the Plan containing the Non-Debtor Injunction.

Furthermore, such a non-consensual alteration of a creditor's contractual rights in favor of non-debtors is unprecedented and will have drastic and far-reaching consequences. Because the Guarantors are able to reap the benefits of the bankruptcy process without actually filing bankruptcy and have no obligation whatsoever to contribute financially or provide collateral in connection with the Debtor's reorganization, the adverse impact on the lending industry cannot be overstated. Guaranties may now be rendered useless, and lenders may lack assurance they have adequate security when making loans in the event of a default of their customer.

For the reasons set forth herein, Woodvine respectfully requests that this Court reverse the Bankruptcy Court's Confirmation Order and vacate the Memorandum Order and Opinion, and grant such other relief as deemed proper.

Dated: August 11, 2025

Respectfully submitted,

*/s/ William T. Finn*
William T. Finn (La. Bar No. 1359)
Leann O. Moses (La. Bar No. 19439)
David F. Waguespack (La. Bar No. 21121)
Charles M. Meeks (La. Bar No. 40448)
CARVER, DARDEN, KORETZKY, TESSIER,
FINN, BLOSSMAN & AREAUX, LLC
1100 Poydras Street, Suite 3100
New Orleans, Louisiana 70163
Telephone: (504) 585-3800
Telecopier: (504) 585-3801
finn@carverdarden.com
moses@carverdarden.com
waguespack@carverdarden.com
meeks@carverdarden.com

*Attorneys for Appellant, Woodvine Partners, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Original Appellant Brief* has been duly served upon all counsel of record by operation of the Court's electronic filing system on this 11th day of August 2025.

/s/ William T. Finn
William T. Finn

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Bankruptcy Procedure 8015(h), the undersigned counsel certifies that Appellants' Brief uses a proportionally-spaced Times New Roman typeface, 14-point, and that the text of the brief comprises 10,717 words according to the word count provided by Microsoft Word Processing software.

/s/ William T. Finn
William T. Finn (La. Bar No. 1359)
Leann O. Moses (La. Bar No. 19439)
David F. Waguespack (La. Bar No. 21121)
Charles M. Meeks (La. Bar No. 40448)
CARVER, DARDEN, KORETZKY, TESSIER,
FINN, BLOSSMAN & AREAUX, LLC
1100 Poydras Street, Suite 3100
New Orleans, Louisiana 70163
Telephone: (504) 585-3800
Telecopier: (504) 585-3801
finn@carverdarden.com
moses@carverdarden.com
waguespack@carverdarden.com
meeks@carverdarden.com

*Attorneys for Appellant, Woodvine Partners, LLC*

4899-9656-4829, v. 4